OPINION OF THE COURT
John G. Ringrose, S.
Decedent died April 26, 1988 and letters of administration were issued to petitioner May 17, 1988. Petitioner now seeks judicial settlement of his account, and jurisdiction has been obtained over all interested parties. The estate is hopelessly insolvent.
Prior to his death, decedent was the owner and operator of Midnight Pharmacy. H. K. Hineline Co., Inc. (Hineline) was a supplier of pharmaceutical supplies to the decedent, and at the time of decedent’s death, Hineline was owed the sum of *798 $34,469.63. During the course of administration of the estate, the fiduciary collected certain accounts due and owing the business and from those funds he paid various funeral and administrative expenses. Hineline objects to these payments and has filed objections to the fiduciary’s account, and requests that the administrator be surcharged. The administrator now moves to dismiss the objections.
On or about October 31, 1986, decedent executed a security agreement, by the terms of which Hineline was given a security interest in “all accounts, inventory, chattel paper, documents, contract rights, instruments, and general intangibles now owned and hereafter acquired and all returns and proceeds therefrom”.
The issue before the court is whether the administrator properly applied the proceeds from the accounts receivable to pay funeral and administrative expenses of the estate. Hineline does not deny it relinquished its interest in the decedent’s inventory.
Hineline reasons that upon decedent’s death, it was entitled to payment from the accounts receivable, since death was an event of default under the security agreement. In addition, Hineline contends the moneys never should have become estate assets, and the proceeds of the accounts receivable at issue should have been applied to the payment of Hineline’s indebtedness. The administrator, on the other hand, contends that he properly applied the funds to payment of funeral and administration expenses, which are preferred under SCPA 1811, that Hineline had no security interest in the accounts receivable, that if Hineline did have a priority it surrendered its security interest to the fiduciary, that Hineline waived its right to its security, and that it would be inequitable to allow Hineline to benefit as a result of the actions taken by the administrator in liquidating the security.
SCPA 1811 sets forth the priorities of debts and claims against the estate. Under SCPA 1811 (1), funeral expenses and expenses of administration have priority over all other debts, and the fiduciary is obligated to pay such expenses “out of the first moneys received” by him. However, the phrase “first moneys received” refers to assets of the estate and does not encompass funds which are subject to a properly perfected security interest. Secured assets do not become property of the estate subject to the priority scheme of SCPA 1811.
There is no dispute that the decedent duly executed a *799 security agreement pertaining to his accounts receivable in compliance with UCC 9-203 (1). However, in order to find that Hineline had a security interest in the particular accounts receivable at issue, the court must find that the following events occurred: (1) decedent acquired rights in the collateral and (2) Hineline gave value. As to the second point, there is no question that Hineline gave "value” as that term is defined in UCC 1-201 (44).
The court must now consider whether decedent acquired rights in the collateral. The accounts receivable in the instant proceeding consist of two types: (1) Medicaid payments owed to the decedent from the Department of Social Services (Medicaid receivables) and (2) other accounts receivable from various individuals and entities. There is no question that decedent acquired rights in the non-Medicaid accounts receivable. The crux of the matter is whether decedent acquired rights in the Medicaid receivables.
In determining whether Hineline’s security interest ever attached to the Medicaid receivables, reference must be made to UCC 9-203 (2), which provides as follows: "A security interest attaches when it becomes enforceable against the debtor with respect to the collateral. Attachment occurs as soon as all of the events specified in subsection (1) have taken place unless explicit agreement postpones the time of attaching.”
In the instant case, Hineline, prior to decedent’s death, did, in May 1987, send the New York State Department of Social Services (Department) a letter requesting that the Department pay Hineline certain Medicaid payments due decedent. In a letter dated June 3, 1987, the Department took the position that it could not, as a matter of law, honor Hineline’s request. The Department cited 42 USC § 1396a (a) (32), which provides that: "no payment under the [Medicaid] plan for any care or service provided to an individual shall be made to anyone other than such individual or the person or institution providing such care or service, under an assignment or power of attorney or otherwise”.
The Department also cited New York Social Services Law § 367-a (1), which provides that: "Any inconsistent provision of this chapter or other law notwithstanding, no assignment of the claim of any supplier of medical assistance shall be valid and enforceable as against any social services district or the department, and any payment with respect to any medical *800 assistance shall be made to the person, institution, state department or agency or municipality supplying such medical assistance’*.
The Department took the position that, within the context of the Medicaid program, it was not an "account debtor” of decedent for purposes of UCC article 9 and, thus, did not have to honor the security agreement or Hineline’s request. It appears that no further action was taken to pursue this request.
There is no question that, under the circumstances of this case, Federal and New York State law provide that: (1) Medicaid payments could not have been made to anyone other than the provider and (2) no assignment of any Medicaid payments due the provider would have been valid and enforceable as against the Department. (42 USC § 1396a [a] [32]; Social Services Law § 367-a.) If decedent were alive and the Hineline obligation was in default, Hineline would have no right to collect the Medicaid receivables from the Department despite its purported security interest in accounts receivable. On the contrary, the Department would be legally obligated to make payment to Mr. Angiulli.
The petitioner contends that in view of the foregoing, it necessarily follows that a security interest may not have been granted in the Medicaid receivables. The court finds that the fact that the Department could not have paid anyone other than decedent is not totally determinative of the issue before the court, to wit, whether a provider of services such as the decedent can grant a security interest in Medicaid payments.
The Medicaid program uses Government funds to pay for the cost of providing medical care to those whose incomes fall below a certain level. Under the statutory procedure, the State, assisted by the Federal Government, pays the provider directly after the provider submits his claim for payment and the claim is approved as valid.
In IMFC Professional Servs. v State of New York (59 AD2d 1047 [1977]), the Fourth Department held that a security interest may be granted in Medicaid payments despite the antiassignment provisions of section 367-a of the Social Services Law. In the course of holding that a security interest in Medicaid accounts receivable had priority over a tax lien, the court analyzed the import of section 367-a of the Social Services Law: "the Legislature did amend section 367-a of the Social Services Law in 1971 so that no assignment of the *801 claim of any supplier of medical assistance shall be valid and enforceable against any social services district (L 1971, ch 449, § 1, eff June 17, 1971). The amendment was enacted to enable the social services district to pay the supplier regardless of any assignment and to relieve the district from the potential liability and increased administrative burdens involved in such assignments (McKinney’s 1971 Session Law of NY, Legislative Memoranda, pp 2419, 2420). The amendment does not invalidate the assignment of such claims, however, except as against any social services district or the department. Thus we conclude that although under the express terms of the statute IMFC may not enforce the assignment against Monroe County Social Services, the assignment to it from Walters Ambulance is valid and enforceable as to all others and by filing its security interest prior in time to the State’s tax warrant the claim of IMFC takes priority over the State’s claim for withholding taxes.” (Supra, at 1048.)
The court concludes that Hineline’s security interest in the Medicaid receivables attached once the Department approved decedent’s claim and authorized payment. Under UCC 9-306 (2), "[A] security interest * * * continues in any identifiable proceeds including collections received by the debtor.” UCC 9-306 (1) defines "proceeds” as, "whatever is received upon the sale, exchange, collection or other disposition of collateral or proceeds.”
Thus, Hineline’s properly perfected security interest continued in the proceeds of the Medicaid receivables and the non-Medicaid receivables after the attorney for petitioner received payment from the Department (UCC 9-306 [2]), and such proceeds never became property of the estate and, thus, could not properly be used to pay funeral and administration expenses.
Little need be said on the issue of Hineline’s alleged surrender or waiver of its security interest in the accounts receivable. Although Hineline admittedly waived its security interest in decedent’s inventory, the administrator has not sustained his burden of proving that Hineline clearly, unequivocally, and decisively acted so as to demonstrate an intent to waive and relinquish its rights in the accounts receivable. (See, Horne v Radiological Health Servs., 83 Misc 2d 446, 455 [Sup Ct, Suffolk County 1975], affd 51 AD2d 544 [2d Dept 1976].) There is simply no proof that Hineline in any way "surrendered” the secured accounts receivable to the administrator.
*802 Although Hineline did not cross-move for summary judgment, the court has searched the record and determined that, since there are no triable issues of fact concerning the validity of Hineline’s objections, judgment should be entered in favor of Hineline, sustaining the objections. (CPLR 3212 [b].)
Having concluded that Hineline was entitled to the accounts receivable proceeds used by the administrator, the court, in the exercise of its equitable powers, finds that Hineline should compensate the administrator for the efforts expended by him in collecting and liquidating the accounts receivable. Since a secured creditor is entitled to deduct the reasonable expenses of repossessing and foreclosing under UCC 9-504 (1), it seems only fair that the administrator should be compensated for his efforts to liquidate the collateral, efforts which will now inure wholly to the benefit of Hineline. The court therefore directs that the administrator furnish the court and Hineline’s attorney with an affidavit of services rendered in collecting the accounts receivable, and the court will award the administrator a reasonable fee for the services rendered, subject to a hearing to determine same, if necessary.
The court finds that Hineline’s objections to the account are valid; the motion to dismiss the objections is denied; the court sua sponte grants judgment holding that the objections are valid to the extent specified herein; and directs that the administrator, or his attorney, furnish the court with an affidavit of services rendered in collecting the accounts receivable at issue. Subsequent to the resolution of the question of attorneys’ fees, a decree of judicial settlement will be entertained, and a determination will be made as to the imposition of any surcharge.